Morning, ladies and gentlemen. We have five cases on the calendar this morning. Two patent cases of Veterans Appeal, a trademark case, and a veterans case, and the latter two are being submitted on the briefs and therefore not being submitted on the briefs. I would like to introduce Mr. Leeland Hutchinson to the podium. Thank you, Your Honor. May it please the Court, my name is Leeland Hutchinson and I represent the GEO Foundation in this appeal. This appeal presents two very narrow issues. First, whether that judgment is void or any arguable basis or judicial power to have entered it. Let me turn to the first issue first. Rule 60b-4 applies to a very narrow set of circumstances. It requires not a mere jurisdictional error, but it does apply when the district court enters relief that in whole or in part is beyond the power of that court to enter the judgment. In that case, the judgment is subject to collateral attack as this court recognized in Christopher Village and as the Seventh Circuit recognized in Indoor Cultivation and the United States v. Titjong case. Wasn't GEO co-plaintiff in the earlier cases? GEO was co-plaintiff in the earlier cases and the question here that you'll hear from appellees is whether GEO, by lacking an appeal of those cases, has waived its rights. The suggestion in Christopher Village and in United Student Aid v. Espinoza is if there was no power to enter the judgment in the earlier cases, then there may be a collateral attack even if there's a failure to appeal. There was a failure to appeal in Christopher Village and it did not stop this court from considering the collateral attack on the judgment. It is a very narrow set of circumstances, Your Honor, and there are many cases out there in which collateral attack is not permitted because the argument is for a mere jurisdictional error, but this is not one of those cases. On what basis do you contend that the prior judgment is void? I was just going to turn to that, Your Honor. There are three reasons why we contend that the prior judgment is void. First of all, GEO is a party in this case which was not accused of wrongdoing and is not legally responsible for Mr. Nilsen's wrongdoing. Therefore, the question is whether the judgment below against GEO, who has as exclusive licensee property rights in these patents, whether that judgment could taint the patents themselves as opposed to being a personal judgment that would merely refuse to assist Mr. Nilsen in enforcement of those. Are you suggesting that at any time that there is a patent that may be tainted as unenforceable that that judgment could be avoided simply by entering into a license agreement? Well, this license agreement predated the judgment, and I'm not commenting on that, but I would suggest to the court that there are three categories of inequitable conduct that may cause different results. There is the classic conduct in which the inequitable conduct procures the claims. There is also cases in which inequitable conduct may occur at the patent office but is immaterial to the procurement of the claims, and there is inequitable conduct that may occur in, say, litigation that is outside the patent office. Now, this court has commented on the extent of the district court's judicial power in several cases. In Aptex v. Quick Turn, this court considered the third or litigation misconduct set of circumstances, and in fact, the district judge in Aptex had entered an order holding the patent unenforceable in anyone's hands. Wasn't GEO simply an alter ego of Nilsen? Your Honor, the argument has been made, but there's no basis in this record, no factual basis for piercing the corporate veil. GEO is a legitimate charitable foundation. Mr. Nilsen did create it, but then he put his patents into that foundation, and there's, although that argument may be raised later, there's no basis in this record for considering that to be a circumstance. Did GEO have independent counsel when the exclusive license was negotiated? I am not sure, Your Honor. So what rule of law would you have us, I mean, firstly, I guess if there's any underpinning in our case law except for Aptex, which deals with kind of an unclean hands theory, but your theory would require that we say what? That a licensee is not, you can't enforce the unenforceability of an inequitable conduct case against a licensee where the inequitable conduct didn't deal with withholding prior art before the patent office? No, it's broader than that, obviously, and I would echo the distinction this court made in its recent Therosense decision, in which the court said that obviously conduct which procures a claim is material, and there's also other types of inequitable conduct that are egregious and may require the doctrine to be applied. So you want us to reapply Therosense to the facts of this case? No, I think Therosense echoes the test in Aptex. I think the test has been uniform throughout. I'm not asking this court to apply a later decision to an earlier case. I just think that... I don't understand. Therosense said there are two circumstances in which there can be inequitable conduct, if there's kind of a but for materiality and if there's egregious misconduct. Right, and we have neither here. Right, but you just said that you're not asking us to apply Therosense. What I'm saying is that the same distinction was made in Aptex. In Aptex, this court said at page 1377, quote, no case law provides a basis for nullifying property rights when such property rights did not themselves accrue through misconduct. That's been the law since before these decisions were made. Well, even if that's the case, why didn't you... isn't the appropriate way to proceed in that regard is to make that argument either before the district court judge or on appeal here, not through a 60B motion, but on a merits determination, right? Well, you surely could have raised those arguments. We surely could have raised those arguments in the district court, but that goes back to the earlier question under Espinoza as to whether the court, in entering the judgment against Geo as well as against Mr. Nilsen, and we are not here suggesting, we're not representing Mr. Nilsen. He's not part of this appeal, so we're not here arguing that the district court lacked an arguable basis to refuse to aid him as a personal matter. But when it entered the judgment against Geo as well, it exceeded its judicial power. Now, under Espinoza, under Christopher Village, and under Indoor Cultivation, that is, although from a matter of judicial economy, perhaps a matter that should have been addressed initially, it is a matter that is subject to collateral attack because the judgment is simply void. I would suggest in answer to Your Honor's earlier question, asking me what rule I would ask this court to apply, I would suggest that the three categories of inequitable conduct should be decided as follows. In the classic case where the inequitable conduct procures a claim, the patent is unenforceable as stated in Aptex and in Theracents. In the litigation misconduct sense where the claims were not procured through inequitable conduct, you can't enter a judgment holding the patent unenforceable by anyone, which is the result of Aptex. In the center category, the middle conduct, where there may have been what this court in Theracents called immaterial inequitable conduct that didn't procure otherwise valid patent claims, that is an issue this court has not faced. It's a matter of first impression here. And I would suggest to Your Honors that you apply the Aptex test to that and hold that there is no basis in the Supreme Court precedent or in the precedent of this court for nullifying the patent property. And therefore, a licensee such as Geo, who was not accused below of any sort of wrongdoing and who had a valid exclusive license to those patents, may be not subject to a judgment that inequitable conduct by the inventor holds those patents unenforceable in its hands. And your view is that 60B is not foreclosed, even though these arguments, the arguments you're making, would have been available during the time of the appeal. That's right. And is there any, in your view, is there any time frame to be considered in 60B? What if we move the clock ahead five years and we're here five years from now? Well, we were only, the time frame here is only three years. There are longer time frames in the 60B4 cases as we cited in our briefs. So I don't think that, but there, you know, the Margolis versus Johns, which is a Seventh Circuit case, 788 Fed Second, 1069 and 1073 footnote six, says the reasonable time criterion of rule 60B as it relates to void judgment is no time limit because a void judgment is no judgment at all, unquote. Well, in Bell versus Eastman, Judge Posner, 2000 case in the Seventh Circuit, didn't that say that the grounds for setting aside a judgment under 60B must be something that could not have been used to obtain a reversal by means of a direct appeal? And haven't you already acknowledged that you could have used the same arguments here for purposes of direct appeal? Bell does say that, but it doesn't apply that to the circumstances where the judgment was beyond the court's power. If you contrast that with indoor cultivation and Titjong, which are also Seventh Circuit decisions, in indoor cultivation, for instance, the court said the judgment is void per se. It's a nullity. So that the point is that if you were in the narrow circumstance where the court exceeded its power, the court cannot create power by consent. So 60B has to operate as a safety valve under those circumstances to permit a judgment that was not just arguably beyond the court's power, but there was no arguable basis for the judgment. And frequently those circumstances may arise, such as they do in this case, where the judgment is not wholly beyond the judicial power of the court on its face, that there are aspects of the judgment, such as the judgment here against Geo, which are beyond the power. Well, arguably, you might have a different result on other aspects of the judgment. So that's why there's a narrow appeal here of just the judgment against Geo. Is it your position, then, that if a patent is the subject of a license, that any assertion of inequitable conduct could only be asserted against the patentee, not against the licensee? No. Obviously, the first category of inequitable conduct that I mentioned, that in which the inequitable conduct procures the claim, raises, I believe, a different rule that's really not and this court has expressed itself several times that it would be very ill-conceived to bring an action like that against those type of claims. Why are you making that distinction? Because the court did an aptex versus quick turn. Well, I realize there's a discussion about that in aptex, but... The question of whether the claim was procured by inequitable conduct or not is, I think, a critical one, Your Honor, because if you have conduct in the patent office, such as the failure to pay the correct maintenance fees, the improper payment of small entity maintenance fees, which is the largest form of inequitable conduct that affects these patents, the only form of inequitable conduct that affects all of them, that's now been cured. That is a circumstance where the patents have otherwise completely valid claims. The maintenance fee issue occurred after they were issued. Wasn't there also a failure to inform the PTO about ongoing litigation? There were three types of inequitable conduct, the maintenance fees, the failure to disclose the Motorola litigation, and the Motorola litigation in that case, these patents all concern compact fluorescent light bulbs. The litigation against Motorola had to do with other types of patent claims Mr. Nelson had. Motorola doesn't even make, use, or sell compact fluorescent light bulbs. Didn't the court also find litigation misconduct? It might have, but not as to these four patents, and not as to GEO. It did not find any misconduct as to GEO at all. Only GEO is appealing this. Only GEO has filed this motion. You're into your rebuttal time. Would like to save it or use it? I would, thank you. Mr. Fitzpatrick. Thank you, Your Honor. May it please the court, Anthony Fitzpatrick from Duane Morris on behalf of Costco. I'm arguing this morning on behalf of the four retailer appellees. The appellant, GEO, is seeking relief under Rule 60b-4, which, as the court knows, requires that the underlying district court judgment be void. There's no basis in this case for relief under that particular rule. There's nothing to suggest here that the district court lacks subject matter jurisdiction. There's no question that a district court has subject matter jurisdiction to adjudicate the enforceability of patents. There are many reasons why this appeal cannot succeed, but I'd like to focus on three this morning. First of all, GEO's Rule 60b-4 motion, while they've dressed it up with constitutional arguments about subject matter jurisdiction and the underlying judgment in this case, but on the outcome of the earlier Osram Sylvania case, which is what was the basis for the judgment in this case. The district court in this case entered summary judgment of inequitable conduct based on what had been found and determined in the district court and in this court in the Osram Sylvania case, and that case adjudicated the unenforceability of all but one of the patents in this case. And as to the fourth the same species types of inequitable conduct applied. So what they're doing today is trying to collaterally attack those outcomes. Secondly, there are procedural flaws, several procedural flaws that are fatal impediments to their appeal. And then thirdly, they've acknowledged, GEO acknowledges that Mr. Nielsen no longer has any ability to enforce these patents. And GEO, as his restricted licensee, has no standing by itself to enforce them. So taking first the issue of the collateral attack on the underlying judgments, the Osram Sylvania district court found that the patents were unenforceable, found several different species in many different instances of inequitable conduct. GEO had direct review of that outcome to this court. This court affirmed the decision of the district court. They then filed a petition for rehearing en banc and a petition for writ of certiorari in the Supreme Court, both of which were denied. Then the district court in Osram Sylvania found that it was an exceptional case and granted Osram Sylvania its attorney's fees. On appeal, they appealed again to this court and the court in its decision specifically pointed out that its arguments to try to overturn the exceptional case finding were an impermissible attempt to collaterally attack the underlying inequitable conduct findings. Then in this case, they did not appeal the judgment but did appeal the exceptional case finding and the attorney's brief in that case that again they were trying to re-argue the substance of the inequitable conduct issues and this court affirmed without decision, without opinion. And here we are now today, the third occasion on which GEO is trying to collaterally attack what happened in the Osram Sylvania case. These patents were adjudicated to be unenforceable because of inequitable conduct and they had their opportunity for direct review in Osram Sylvania. They were unsuccessful. They had their opportunity for direct review in this case. But your friend suggests that rule 60b4 isn't foreclosed by the fact that there was an avenue for direct appeal. Is he right or wrong about that? I think I would submit, Your Honor, in this case that he's wrong. Rule 60, GEO has relied upon the Espinoza decision from the Supreme Court from last year. Espinoza teaches that rule 60b4 is restricted for exceptional cases where there is absolutely no arguable basis for saying that the lower court had jurisdiction. In this case, that's very clearly not the case. There's such a long history of litigation and opportunity for review that it simply can't be said that this could possibly fit into that parameter. But in any event, the procedural impediments that they have are that they consented to entry of judgment as to three of the four patents. Under Seventh Circuit law, the Acorn case, they waived their right to seek review as to those three patents. As to the fourth patent and as to all of these patents, they never made any of these constitutional or subject matter jurisdiction arguments at all in any prior proceeding. They gave up those arguments. They did not seek direct review. The decisions of the Seventh Circuit teach that you can't use rule 60b as a substitute for a direct appeal. They had their opportunity and they decided not to take it. And then, in addition, they waited. Judgment in this case entered in March of 2008. They waited until November of 2009 before they filed their rule 60b-4 motion. There's no explanation, no reason for that unreasonable delay. They've acknowledged today that these are all grounds that could have been asserted. They didn't use them. And we submit it's improper at this point. What do you, and this is, I guess I'm asking you to speculate because this isn't on the record, what is your speculation as to what the backstory is here? Is it just that Feruson's decision prompted this reconsideration or a new reflection on the various pieces of inequitable conduct? I think that Mr. Nielsen and GEO Foundation are litigants who just won't stop. Okay, well. They didn't stop in the Osram case. They haven't stopped in this case. I think that they're trying to re-argue the same issues in AptX. I mean, I guess you're right to the extent that those arguments, to the extent they're valid under AptX. Is it AptX? AptX versus QuickTest. Would have been available to them in the earlier case. But what about the merits of those arguments that AptX fosters or provides the underpinnings for distinction and the different types of inequitable conduct? I don't think that's at all a fair reading of AptX. What AptX says is, if patents are unenforceable because of inequitable conduct, that taints the property right. The patents are unenforceable ab initio and they're unenforceable by any party. And that's echoed in the Feruson's decision. Feruson says, inequitable conduct is the atomic bomb of patent law. It says, if the patent is tainted with inequitable conduct, it is unenforceable. It infects the property right. And so it just makes no sense for a licensee to say, well, we were really an innocent bystander. We, of course, contend that they were by no means an innocent bystander, but we should be allowed to enforce these rights. But there is a distinction between, you would agree, between the unclean hands kind of litigation misconduct, which would be more personal to the particular party as opposed to making the entire patent unenforceable, right? Oh, I would agree with that, Your Honor. And I say, inequitable conduct evolved from the unclean hands doctrine, but it evolved into something broader. It has a broader scope. It has a different remedy. Inequitable conduct is different from unclean hands. And I think Feruson teaches that. And in this case, these patents were held unenforceable for inequitable conduct. They were not held unenforceable in this case for litigation misconduct. Litigation misconduct was found in this case, but that's not the basis for the judgment is this is inequitable conduct. And so I don't think that the distinction that the appellant is trying to draw between unclean hands, or I shouldn't say the distinction, that the merging that they're trying to make of unclean hands and inequitable conduct just doesn't help them because these patents are unenforceable because of inequitable conduct. There's also the issue of standing. Ole Nielsen is the owner of these patents. The complaint, their complaint says he's the owner. Their license agreement says he's the owner. GEO is a licensee with restricted rights. Its sole business, as Judge Dara found in the Osram Sylvania case, is to license and litigate the Nielsen patents. The license agreement restricts the rights that GEO has. It specifically says that GEO does not have the right to make or sell or under the license agreement. That's a critical central aspect of exercising patent rights, but GEO doesn't have it. Nielsen, according to the complaint, negotiates license agreements on behalf of GEO. Nielsen gets 25% of their royalties. Nielsen has a right to terminate. GEO has no right to assign. So clearly, under the precedence of this court, the Propat case and others, GEO is not a party that holds all substantial rights in these patents. It has no ability to sue and to enforce these patents by itself. The only way it could do so, possibly, conceivably, is with Nielsen as a co-plaintiff. And yet, they admit in their reply brief, they specifically say Nielsen is barred from enforcing these patents. So there's no legal manner, there's no procedural way in which they could possibly have standing to enforce these patents. As I said earlier, your honors, the Espinoza decision teaches that Rule 60b-4 is restricted for an exceptional case where there's no arguable basis for jurisdiction in the district court. This case doesn't fit those parameters at all. By definition, we would submit this case cannot meet that requirement. On the contrary, the district court in Ostrom, Sylvania, and in this case, and this court in Ostrom, Sylvania, and in the exceptional case decision in this court, properly applied the law, found that these patents were unenforceable, found that this was an exceptional case, and awarded attorneys fees. And at this both as filed and as argued, the retailer appellees deserve finality. They deserve finality with respect to their litigation against Nielsen and GEO, which was filed more than seven years ago. And so, we contend that this appeal cannot succeed, and we respectfully request that the court affirm the district court's denial of the Rule 60b-4 motion and award the retailers their attorneys fees and costs. Thank you, Mr. Fitzpatrick. Mr. Hutchinson has a little rebuttal time. May I inquire as to how much time I have? Just under two minutes. Thank you, Your Honor. Let me make three brief points then. In a brief filed on August 16, 2010, the appellees, this was their sanctions situation, said on page two, quote, although GEO is correct that a Rule 60b-4 motion may be used to make a jurisdictional challenge in the absence of an appeal, GEO's argument fails because GEO lacks any reasonable basis for claiming that the district court lacked jurisdiction in this case. That's an admission that collateral attacks are possible, and that statement is correct. Turning to aptX, briefly, this court did make a distinction between different types of inequitable conduct in that case because it reversed the district court's broad judgment in that case. Finally, let me turn to standing on GEO's behalf to enforce this patent without Mr. Nilsen. This is a situation where I don't think that issue is before this court. That is an issue to be determined later if this court vacates the judgment that was entered against GEO. As I understand the rules for when an exclusive licensee is a patentee capable of GEO, if it lacks those rights today, may acquire them if the judgment is vacated and assert a proper infringement claim at that time. And that argument would be one for the district court when those arguments are made, but that is not a basis on which this appeal should be denied. It does not moot this appeal because these patents have life, infringement continues, and GEO is capable of acquiring whatever rights it may need to proceed if this court agrees with our appeal. And that's your view of what the test is for standing, that you have the potential to acquire the rights at some later time? You have to have the standing on the day you file suit and every day thereafter, but GEO could, if this judgment is vacated, the point I'm making, Your Honor, is GEO could bring a claim with the correct bundled rights if this court were to decide that the bundle it has right now, which we do not admit, is insufficient. It could acquire additional rights necessary to proceed from a party that has been adjudicated to have committed inequitable conduct? Mr. Nielsen could not continue. GEO could buy the patents outright, for instance. Well, so could I, but that wouldn't give me standing. So would that give me standing to proceed on a 64B motion? No, no, no. It has nothing to do with 60B4. We're talking about a claim afterwards if this court vacates the judgment against GEO. GEO's standing to bring the 60B4 motion is not mooted by whether or not it could proceed in litigation if this court grants its motion. That's my narrow point. Thank you. Thank you. Mr. Hutchinson, we'll take the case under advisement.